EDWARD W. SCHORR, PLAINTIFF, v. EASTERN ENGINEERING COMPANY, A CORPORATION, DEFENDANT.

Argued January 22, 1931—Decided July 2, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and LLOYD.

For the rule, *Cole & Cole.*

*Contra, Samuel T. French* and *William I. Garrison.*

PER CURIAM.

This is the defendant's rule to show cause why a verdict in favor of the plaintiff at the Atlantic Circuit for $12,500 should not be set aside.

The evidence disclosed that on November 11th, 1929, the plaintiff was driving his automobile along the Longport-Somers Point boulevard at a point where the highway passes over Hospital creek, at which time and place the defendant company was redecking the bridge over the creek, the bridge being three hundred and eighty-nine feet long and forty feet wide. The westerly side of the bridge as one approaches from Longport was barricaded off from traffic. Plaintiff on the day in question was approaching the bridge from the Longport side, going to his work in the early morning before daybreak, driving his automobile at from ten to fifteen miles an hour. He struck the westerly corner of the barricade and lost control of his car, which broke through the guard rail and fell into the water, to the plaintiff's serious injury.

The plaintiff contended and at the trial produced evidence tending to show that he was injured because of the negligent act of the defendant in failing to have any signal or warning upon the highway at the entrance of the bridge giving notice as to the danger to the traveling public.

The defendant denied negligence and contended that plaintiff's injuries were caused wholly by the negligence of the plaintiff, or in any event contributed to by him, and further now contends that the verdict was against the weight of the evidence and that the jury's verdict for $12,500 is excessive.

We think there was ample evidence of defendant's negligence and that the verdict in that respect was not against the clear weight of the evidence. While the evidence was contradictory to the extent of presenting a fair jury question, it seems clear that there was ample evidence produced by the plaintiff that the lights which theretofore during the construction had been maintained on the highway at the entrance of the bridge by means of lighted lanterns, were wholly absent on this occasion when the plaintiff approached the bridge about five-thirty A. M., and before daylight on the morning in question. The plaintiff so testified, and so did at least four other apparently disinterested witnesses who likewise approached the bridge along about the same hour.

Their testimony was unanimously to the effect that there were no lights upon the bridge, and no warning or signals of any kind present.

While the testimony produced by the defendant was for the most part directly to the contrary, yet there are some phases of defendant's proof which we think tended to corroborate the plaintiff's case.

We think that it cannot be said that the plaintiff was guilty of contributory negligence as a matter of law, nor that the jury's finding was against the great weight of the evidence. We believe the great weight of the evidence is that plaintiff exercised the degree of care that an ordinarily prudent person would and should use under like circumstances and the conditions with which he was confronted. The evidence was that he had used this highway before on several occasions while the bridge was under construction, and that on past occasions always, lanterns guided him safely across. He relied upon the presence of the lights to warn him of the barricade, and naturally did so, since the visibility was not good and there was no landmark to indicate to him the presence of the bridge or the barricade. His testimony was to the effect that he was attentive and apprehensive, and was proceeding cautiously and was upon the lookout for lights. He had his headlights on, but his headlights under the conditions at the moment did not disclose to him the barricade, although he was watching carefully, and he testified that the barricade was not disclosed to him because "these objects must have blended in with the color of the road, because they were not visible," and that testimony seems to be somewhat corroborated by the experiences of some of the plaintiff's witnesses. Plaintiff's testimony was to the effect that he was driving comparatively slowly, being apprehensive, and that when he struck the barricade his car straddled the rail and thereafter he had no control in steering it, with the result that it went diagonally and crashed through the rail and fell into the water.

Defendant says that the verdict is excessive. We have not reached that conclusion. Plaintiff suffered considerable loss

so far as his automobile was concerned. It was three years old and he had paid $1,000 for it. The evidence indicated that it would cost $660 for repairs; he seems to have actually received an allowance of $135 for it. We believe that he was seriously injured. He certainly had a nerve-racking experience. According to the proofs he and his car were completely submerged in deep water. After extricating himself he crawled onto the highway and was taken to the hospital. There the attending physician found he was suffering from profound shock, lacerations above the right eye, contusions of the left ear and left leg and lumbar region, and abrasions on his face. He remained under treatment at the hospital for six days when he was discharged, by no means well, but for financial reasons he was obliged to depart. The hospital bill was upwards of $200. He returned to the hospital weekly for three weeks and then monthly for two months, and was there again before the trial. The testimony was that he was mentally upset; that he had a limitation of the motion of his spinal column which caused pain when bending forward or laterally, which was said to be chronic; and there was testimony to the effect that he had a fifty per cent. loss of hearing in his left ear, which was permanent, and was in a highly emotional condition evidenced by objective symptoms, and there was a wasting away of muscles which was due to the injury, and at the trial there was ample testimony that he was unable to work. Prior to the accident he seems to have been engaged in the trucking business, having two trucks in use for which he received $2.50 an hour and averaged ten hours a day from their steady use, and that as a result of the accident and his numerous physical and nervous injuries he was unable to return to that occupation.

The rule to show cause will be discharged, with costs.